**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **STEVE IMBODY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:08-CV-00218** |
| | ) | |
| **C & R PLATING CORP.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court in this suit under the Americans with Disabilities Act is Defendant C &

R Plating Corp.'s motion to compel Plaintiff Steve Imbody to answer numerous interrogatories.

(Docket # 68.) Specifically, C & R Plating's First Set of Interrogatories were numbered one

through twenty-eight, many with subparts, and Imbody only responded to the first eight,

asserting that the remainder exceeded the thirty-interrogatory limit set in this Court's scheduling

order. (Tr. 49, 50.) For the following reasons, C & R Plating's motion will be GRANTED IN

PART and DENIED IN PART.

### A. Applicable Law

Federal Rule of Civil Procedure 33(a) states that "[u]nless otherwise stipulated or ordered

by the court, a party may serve on any other party no more than 25 written interrogatories,

*including all discrete subparts*." (emphasis added). Here, the parties agreed, and the Court

granted them leave, to propound "up to thirty (30) Interrogatories, including subparts" per side.

(Report of Parties' Planning Meeting ¶ 2(d).)

"[I]nterrogatory subparts are to be counted as one interrogatory if they are logically or

factually subsumed within and necessarily related to the primary question." *Holmes v. Trs. of*

*Purdue Univ.*, No. 4:06-CV-114, 2008 WL 656263, at *2 (N.D. Ind. Mar. 5, 2008) (citing *Bell v. Woodward Governor Co.*, No. 03-C-50190, 2005 WL 3829134, at *1 (N.D. Ill. June 30, 2005) (quoting *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997)); *see* 7 MOORE'S FEDERAL PRACTICE § 33.30[2] (Matthew Bender 3rd ed.). For example, "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication." *Bell*, 2005 WL 3829134, at *1 n.2 (citing Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993)).

Stated another way, "if the subparts are 'directed at eliciting details concerning a common theme,' the subparts should be counted together as one interrogatory." *Jackson v. Alton & S. Ry. Co.*, No. 07-807-GPM, 2008 U.S. Dist. LEXIS 53310, at *3 (S.D. Ill. July 11, 2008) (quoting Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2168.1). "[O]nce a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated." *Theobles v. Industrial Maint. Co.*, 247 F.R.D. 483, 485 (D.V.I. Nov. 27, 2006) (quoting *Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005)).

## B. Discussion

To begin, Imbody argues that by answering the first eight Interrogatories posed by C & R Plating, he actually responded to forty-four interrogatories. Thus, as he sees it, his objections to more than the authorized thirty (Interrogatory Nos. 9 through 28) were proper. This puts the focus on all of C & R Plating's Interrogatories with their subparts, which the Court will discuss

in turn.[1] *See generally Jackson*, 2008 U.S. Dist. LEXIS 53310, at *3 ("This court utilizes a common sense, rather than overly technical, approach to construing subparts of interrogatories."). Although the Court ultimately concludes that C & R Plating did indeed exceed the thirty-interrogatory limit, it was hardly on the scale depicted by Imbody.

Interrogatory No. 4. This Interrogatory reads: "As to your current employments, state:" and then lists fourteen subparts. Subparts (a)-(k) and (n) constitute one interrogatory as they seek basic information about hiring and ending dates, job description and title, hours worked per week, and salary and benefits. However, subpart (l) constitutes a separate interrogatory as it inquires about promotions. Subpart (m) also constitutes a separate interrogatory, as it asks Imbody whether any disciplinary action was taken against him and if so, the action taken and the reason for it. *See Talevski v. Carter*, No. 2:05-CV-184, 2007 WL 1797634, at *5 (N.D. Ind. June 18, 2007) ("[I]interrogatories that ask for the name, address, and dates of [the plaintiff's] past employment become more than one interrogatory when the subparts ask for the details regarding any disciplinary incident that occurred while employed."). Therefore, Interrogatory No. 4 constitutes three separate interrogatories, not fourteen as Imbody asserts.

Interrogatory No. 6. This Interrogatory is very similar to No. 4, but requests the information with respect to Imbody's past employers during the five years preceding his injury. Subparts (a)-(l), and (o) constitute one interrogatory because they seek the same basic information about hiring and ending dates, job description and title, hours worked, and salary and benefits as Interrogatory No. 4. Similarly, subpart (m) and (n) are each separate

---

[1] Imbody does not dispute that Interrogatory Nos. 1-3, 5, 10-11, 14, 18-19, and 23-24, even with subparts, constitute separate interrogatories. Therefore, these eleven Interrogatories do not require further discussion.

interrogatories because they inquire about promotions and disciplinary action. *See id.* Subparts

(p) and (q) also form a separate interrogatory, as they inquire about the reason for leaving

employment and previous job conditions, which amounts to a distinct line of inquiry. Therefore,

Interrogatory No. 6 propounds four separate interrogatories, not seventeen as Imbody contends.

Interrogatory No. 7. This Interrogatory reads: "If you are not employed, state:" and then

sets forth four subparts. Subpart (a) asks for the date that Imbody's last employment ended and

the reasons for termination. In contrast, subparts (b)-(d) asks to whom Imbody has submitted

applications; the dates of all employment applications and interviews; and if he has not

submitted any applications, his reasons for failing to do so. Therefore, this Interrogatory actually

propounds two distinct lines of inquiry–one about Imbody's last employment and the other about

applying for new employment. Consequently, it presents two interrogatories.

Interrogatory No. 8. This Interrogatory inquires about whether Imbody has ever filed a

lawsuit and if so, asks in five subparts to identify the name of the defendant, the claims in

dispute, the court and case number of the suit, whether it is still pending, and the outcome.

Obviously, these five subparts are each "logically or factually subsumed within and necessarily

related to the primary question", *Holmes*, 2008 WL 656263, at *2, and therefore, constitute one

interrogatory.

Interrogatory No. 9. This Interrogatory is essentially the same as No. 8, except that it

inquires about whether Imbody has ever had a lawsuit filed against him. Like No. 8, this

Interrogatory counts as only one interrogatory.

Interrogatory No. 12. This Interrogatory inquires whether Imbody has ever applied for or

received any form of public assistance such as welfare or food stamps. If so, it asks him in six

subparts to respond with the date of the application, whether it was accepted or rejected, the date

he received public assistance, the amount and type of assistance, and the reasons for benefits

represented on the application. These subparts seem "directed at eliciting details concerning a

common theme"–Imbody's pursuit of public assistance. *Jackson*, 2008 U.S. Dist. LEXIS 53310,

at \*3. Furthermore, this Interrogatory is substantially the same as Interrogatory Nos. 10 and 11

requesting information about Imbody's pursuit of unemployment benefits and social security

disability benefits, which he apparently concedes propounds just one interrogatory each.

Therefore, this Interrogatory is also viewed as a single inquiry.

Interrogatory No. 13. This Interrogatory asks whether Imbody has ever been convicted of

a felony or misdemeanor involving moral turpitude and if so, to disclose the offense, the court in

which he was convicted, the cause number, the dates, and whether he is currently on parole or

probation. Obviously, these five subparts are each "logically or factually subsumed within and

necessarily related to the primary question", *Holmes*, 2008 WL 656263, at \*2, and therefore,

constitute one interrogatory.

Interrogatory No. 15. This Interrogatory asks Imbody to state the facts and

circumstances upon which he intends to rely to support his claim that C & R Plating required

him to perform work that violated his work restrictions. It then seeks the answer to four

subparts, inquiring about the name of the individual who asked him to perform the work and

whether this individual had supervisory authority over him, the individual's job title, the date he

was asked to perform the work, and the work that he was asked to perform. These questions

count as just one interrogatory. *See, e.g., Kendall*, 174 F.R.D. at 686 (finding one interrogatory

where several questions were designed to identify instances where the plaintiff was called to

work but declined).

Interrogatory No. 16. The next Interrogatory requests that Imbody respond with the facts and circumstances upon which he intends to rely to support his contention that he refused to perform work outside of his medical restrictions. It then seeks the answer to three subparts, inquiring about the name of the individual to whom he conveyed his refusal and whether this individual had supervisory authority over him, the date of his refusal, and the "content" of the refusal. This inquiry too equates to just one interrogatory. *See, e.g., id.*

Interrogatory No. 17. Similar to No. 15, Interrogatory No. 17 asks Imbody to state the facts and circumstances upon which he intends to rely to support his contention that C & R Plating asked him to return from his recheck without medical restrictions. It includes four subparts, inquiring about the name of the individual who asked him to do so and whether the individual had supervisory authority over him, the individual's job title, the date he was asked to return from his recheck without restrictions, and the work he was specifically asked to perform that violated his restrictions. Like Interrogatory No. 15, these four subparts are "directed at eliciting details concerning a common theme", *Jackson*, 2008 U.S. Dist. LEXIS 53310, at *3, and therefore count as one interrogatory. *See, e.g., Kendall*, 174 F.R.D. at 686.

Interrogatory No. 20. This Interrogatory essentially asks Imbody to identify the facts or circumstances upon which he intends to rely to support his contention that similarly situated individuals received more favorable treatment than him. It articulates two subparts that seek the names of the individuals and the favorable treatment that they received. These two subparts clearly constitute just one interrogatory. *See Jackson*, 2008 U.S. Dist. LEXIS 53310, at *3 (finding just one interrogatory where various subparts were aimed at eliciting details about an

6

allegation of a pattern and practice of disparate treatment).

Interrogatory No. 21. This Interrogatory inquires about the facts or circumstances upon which Imbody intends to rely to support his contention that C & R Plating terminated two other employees who were on light duty or had medical restrictions. In four subparts, it asks him to disclose the names of these individuals, their duties, their medical restrictions, and whether or not they were probationary employees. Again, these four subparts constitute just one interrogatory. *See id.*

Interrogatory No. 22. This Interrogatory requests the name, address, telephone number, and employer of every person who has knowledge of the events involved in the suit. It then articulates three subparts that ask for the substance of each person's knowledge, when the person acquired his knowledge, and any documents relating to such knowledge. This Interrogatory constitutes two separate inquiries–the first two subparts concerning knowledge are one interrogatory, while the second is the request for identification of documents. *See Kendall*, 174 F.R.D. at 686 (finding an interrogatory asking for a description of the job qualifications and a description of the documents where the qualifications were articulated to be two separate interrogatories).

Interrogatory No. 25. The next Interrogatory asks Imbody to describe his job duties while he worked for C & R Plating on "the barrel line". It articulates five subparts requesting the amount of weight he had to lift, the repetition of lifting, the amount of standing, the amount of sitting, and the names of his co-workers on the line. This Interrogatory propounds two separate interrogatories–the first four subparts inquiring about the physical requirements of the job, and the remaining subpart requesting names of co-workers.

Interrogatory No. 26.  This Interrogatory is similar to No. 25 in that Imbody is asked to describe his job duties with C & R Plating after his injury in June 2006, setting forth six subparts that all relate to the physical requirements of the job.  This propounds just one interrogatory.

Interrogatory No. 27.  This Interrogatory inquires whether Imbody has ever filed a complaint or grievance against any other employer with the Equal Employment Opportunity Commission, Indiana Civil Rights Commission, or Indiana Department of Workforce Development for harassment, discrimination, or retaliation.  It then articulates four subparts, requesting the name and address of the employer and any individuals involved, the substance of the complaint, and the substance of the investigation and resolution.  This constitutes just one interrogatory.

Interrogatory No. 28.  The final Interrogatory advances the same subparts as No. 27, except that it asks whether Imbody filed any complaint or claim against any other employer for Worker's Compensation benefits.  Like No. 27, this Interrogatory advances just one interrogatory.

In sum, C & R Plating has propounded thirty-six interrogatories, and thus has exceeded the Court-imposed thirty-interrogatory limit by six; not by seventy-seven as Imbody contends.  Therefore, Imbody's assertion that C & R Plating has tried to "bully" and "intimidate" him through its use of excessive interrogatories is simply without merit. (Pl.'s Resp. 14, 15.)  C & R Plating's motion to compel will be GRANTED IN PART and DENIED IN PART.  Since Imbody has already answered, by the Court's count, fourteen interrogatories, C & R Plating will be given leave to choose sixteen unanswered interrogatories from its First Set of Interrogatories

for re-submission to Imbody.[2]

C. <u>Conclusion</u>

For the foregoing reasons, C & R Plating's first motion to compel discovery responses

(Docket # 68) is GRANTED IN PART and DENIED IN PART. C & R Plating may select

sixteen of its unanswered interrogatories from its First Set of Interrogatories and resubmit them

to Imbody. Imbody shall have thirty days from his receipt of these interrogatories to respond.

SO ORDERED.

Enter for this 12th day of February, 2010.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[2] Imbody also argues that C & R Plating's motion to compel should be denied with respect to certain Interrogatories because it "improperly seeks to substitute" these Interrogatories for a deposition. (Pl.'s Resp. 10-11.) In that vein, Imbody requests the Court to enter a protective order "that depositions rather than interrogatories be used" to obtain certain information. (Pl.'s Resp. 10-11.) Of course, Imbody's argument is without merit. "A party is free to make reasonable use of the various discovery devices provided by Rules 26 through 37 as he sees fit." *Kainz v. Anheuser-Busch, Inc.*, 15 F.R.D. 242, 248 (N.D. Ill. 1954) (emphasizing that an intervening plaintiff's willingness to submit to oral deposition does not oblige the defendant to pursue that discovery method). "Interrogatories have advantages over other methods of discovery because they serve a proper function in avoiding unfruitful depositions, in inexpensively narrowing the areas of discovery, in minimizing delay, and in narrowing issues for trial." *Illiana Surgery & Med. Ctr., LLC v. Hartford Fire Ins. Co.*, No. 2:07-cv-3, 2008 WL 5111358, at *2 (N.D. Ind. Dec. 1, 2008) (citation and internal quotation marks omitted).